UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DENNIS MEDINA )<br>    Plaintiff, )<br>)<br>v. )<br>)<br>JAMES COADY, WILLIAM K. )<br>CONLON, PAUL STUDENSKI )<br>and the CITY OF BROCKTON )<br>    Defendants. )<br>) | C.A No. 07-10985-RCL |

**MEMORANDUM IN SUPPORT OF MOTION FOR LEAVE TO SUPPLEMENT**

Now comes the Plaintiff, Dennis Medina, and hereby submits this memorandum of law in support of his motion for leave to supplement.

## INTRODUCTION

In his opposition to Plaintiff's motion for attachment, Defendant asserted that he is not the owner of the property sought for attachment, noting that he "has not been the owner since 2007." In fact, as Plaintiff recently discovered, six days after being served with the instant complaint, Defendant transferred two properties, then owned by Defendant and his wife as tenants by the entirety, to his wife individually.

Plaintiff asserts that these transfers are fraudulent, designed specifically for the purpose of evading judgment in the instant complaint. Therefore, the Plaintiff asks this Court to void such transfers and grant a writ of attachment.

## PROCEDURAL BACKGROUND

On May 24, 2007, Mr. Medina filed the instant complaint against Coady, seeking damages for excessive force and false arrest. On or about June 20, 2007, the complaint was served on Coady. Six days later, on June 26, Coady transferred ownership of his property at 10-

1

12 Wampanoag Road ("the Wampanoag Road property"), one of the properties at issue, to his wife individually. In consideration for this conveyance – of a property valued at more than $300,000 – Elizabeth Coady paid her husband $1.00. In addition, that same day, Coady and his wife transferred ownership of their home, 19 Paine Road ("the Paine Road property"), to Elizabeth Coady individually. For this transaction as well, of a property valued at nearly $400,000, Mrs. Coady paid her husband consideration in the amount of $1.00.

Nearly nine months later, on March 3, 2008, Elizabeth Coady was deposed in the instant case. In that deposition, Mrs. Coady testified that she and her husband both owned two properties: the Paine Road property, and the Wampanoag Road property.[1]

---

[1]
    [Q.]    … Where do you reside now?
    A.    19 Paine Road, South Yarmouth
    …
    Q.    Who do you reside there with?
    A.    My husband and my children
    Q.    How long have you owned that property?
    A.    Just over a year.
    Q.    And do you or your husband own any property besides the property in South Yarmouth?
    A.    Yes.
    Q.    What is that?
    A.    A duplex in South Yarmouth, a rental property.

Deposition of Elizabeth A. Coady, Page 4, lines 19-24, Page 5, lines 1-8.

    Q.    What is the address of that rental property?
    A.    1012 [sic] Wampanoag Road in South Yarmouth.
    Q.    When did your you [sic] and your husband buy that?
    A.    He purchased it. I don't know.
    Q.    Before you were married?
    A.    Yes.
    Q.    When did you buy the house that you are currently living in?
    A.    I think December of '06. But that's when we moved in. It was probably earlier than that that we purchased it.

*Id.*, Page 45, lines 3-15. According to Barnstable Land Court Document #1050350-1, James and Elizabeth Coady were granted with quitclaim covenants for the Paine Road property on November 29, 2006. According to Barnstable County Registry of Deeds, Book 10123, Page 3, James Coady obtained quitclaim covenants to the Wampanoag Road property on March 5, 1996. On February 26, 2001, Coady transferred the property to his then-fiancé, Elizabeth Blanchette. Barnstable Registry of Deeds, Book 13591, Page 252. Following their marriage, Elizabeth Coady on February 13, 2002 transferred the property to herself and Coady as tenants by the entirety. Barnstable County Registry of Deeds, Book 14840, Page 218.

In an effort to seek security for a possible judgment, Plaintiff attempted to confirm the existence of those properties, as well as their current ownership.  The Barnstable County Register of Deeds provides a website to the public, designed to provide visual access to all documents held by that county's Registry of Deeds and Land Court. <http://www.bcrd.co.barnstable.ma.us> Documents held by the Barnstable County Registry of Deeds indicate that Defendant Coady had obtained the Wampanoag Road property in 1996.  Barnstable County Registry of Deeds, Book 10123-3, Pages 3 and 5.  Documents held by the Barnstable County Land Court indicated that James and Elizabeth Coady had obtained the Paine Road property in November of 2006. Barnstable County Land Court, Documents # 1050349-1, 1050350-1, 1050351-1, 1050352-1. However, documents indicate that Coady transferred that property to his wife on June 26, 2007. Barnstable County Land Court, Document # 1067671-1.

Based on this information, Plaintiff filed an Ex Parte Motion for Attachment with this Court, seeking attachment of the Wampanoag Road property.  In part, Plaintiff argued that Defendant's transfer of the Paine Road property six days after being served with the instant complaint created a likelihood that the Defendant was attempting fraudulently to convey or conceal his properties.

After this Court denied the Ex Parte Motion without prejudice, Plaintiff filed a new Motion for Attachment.  In opposition to that motion, Defendant asserted that he "has not been the owner [of the Wampanoag Road property] since 2007."  It was only upon receiving Defendant's Opposition brief that Plaintiff learned the Wampanoag Road property had been transferred from Defendant's ownership.

## **ARGUMENT**

Immediately upon being served in the instant action, Coady transferred two real assets to his wife, in a deliberate and fraudulent move to evade judgment in the instant action. Because Medina is a creditor of Coady, Medina is entitled to have the fraudulent conveyances of Coady's property voided, and the property attached. In addition, Medina shows a strong likelihood that he will prevail and that he will obtain a judgment equal to or greater than the value of the property sought for attachment.

The use of force employed by Coady against Medina would not have been justified under any circumstances. Both Medina's medical injuries and the resolution of his criminal case specifically illustrate Coady's violation of Medina's rights, and thereby the likelihood that Medina will prevail. Finally, the nature of the allegations against Medina is such that a jury siding with Medina would necessarily find that Coady had engaged in egregious and intentional conduct, worthy of at least the value of the property sought for attachment in punitive damages.

**I.   COADY FRAUDULENTLY CONVEYED HIS PROPERTY FOR THE PURPOSE OF EVADING JUDGMENT IN THE INSTANT ACTION.**

The property sought for attachment was fraudulently conveyed for the express purpose of evading Coady's potential debt to Medina. On or about June 20, 2007, the instant complaint was served on Coady. Six days later, on June 26, Coady transferred ownership of the Wampanoag Road property at issue to his wife individually. Barnstable Registry of Deeds, Book 22148, Page 45. In consideration for this conveyance – of a property valued at more than $300,000 – Elizabeth Coady paid her husband $1.00. *Id.* In addition, that same day, Coady and his wife transferred ownership of their home, the Paine Road property, valued at nearly $400,000, to Elizabeth Coady individually. Barnstable Land Court Document #1067671-1. For this transaction as well, Mrs. Coady paid her husband consideration in the amount of $1.00. *Id.*

4

Medina is a creditor of Coady's, entitled to access to Coady's property to the extent that it may play a role in any judgment against Coady. Under M.G.L. c. 109A § 2, a creditor is a person who has

> a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured.

*Id.* By virtue of his claim against Coady, Medina has a right to payment by Coady.

The indices of the fraudulent transfer worked by Coady here are abundant. Under M.G.L. c. 109, § 5(a), a transfer by a debtor is fraudulent as to a creditor "whether the creditor's claim arose before or after the transfer was made," if the transfer was made "with actual intent to hinder, delay, or defraud any creditor of the debtor." In determining "actual intent" to prevent access to the asset, the court may consider, *inter alia*, whether "the debtor retained possession or control of the property transferred after the transfer" (§ 5 (b)(2)); whether "before the transfer was made … the debtor had been sued[,]" (§ 5(b)(4)); and the fact that "the value of the consideration received by the debtor was [not] reasonably equivalent to the value of the asset transferred . . . " (§ 5(b)(8)). Upon information and belief, Coady continues to reside in or otherwise make use of, and therefore to exercise control over, both the Paine Road property and the Wampanoag Road property. Moreover, Coady had already been sued at the time the transfers were made. Finally, the value of the consideration paid by Elizabeth Coady – $2.00 – was nowhere near the roughly $700,000 value of Coady's assets. Thus, Coady has acted with actual intent to defraud Medina.

Furthermore, whether Medina has already obtained a judgment in the instant proceedings is irrelevant to whether he qualifies as Coady's creditor. In *Innis v. Robertson*, 67 Mass.App.Ct. 388, 393 (2006), the court stated that "[o]ne need not have obtained a judgment in order to

qualify as a creditor for fraudulent conveyance purposes." In a case almost directly on point with the case at bar, the defendant in a civil action and his wife had taken steps during the pendency of that case to convey four properties owned by them as tenants by the entirety to the defendant's wife individually. *Id.* at 389-390. Following a judgment for the plaintiff, the defendant promptly declared bankruptcy. *Id.* The plaintiff brought a separate case for fraudulent transfer, asking the court to set aside the four real estate conveyances so that the property could be reached and applied to the outstanding judgment. *Id.* In response to the defendant's objection that the plaintiff did not qualify as a creditor, the trial court and appellate court both ruled that the plaintiff's claim against the defendant, though unresolved at the time of the conveyances, qualified the plaintiff as the holder of a debt. *Id.* at 393. These facts directly parallel those of the case at bar.

Under M.G.L. c. 109A § 8(a), a creditor may, in an action for relief against a transfer, obtain avoidance of the transfer or an attachment against the asset transferred. Because Plaintiff is a creditor of Medina's, and Medina has fraudulently conveyed his assets in order to avoid his debt to Medina, Plaintiff asks that this Court void such transfer of assets and allow the motion for attachment.

## II.    THE EXTENT OF PLAINTIFF'S INJURIES, AND THE RESOLUTION OF HIS CRIMINAL CASE, SPECIFICALLY ESTABLISHES PLAINTIFF'S LIKELIHOOD OF PREVAILING ON THE MERITS.

Defendant argues that Plaintiff is unlikely to prevail on the merits. To this end, Defendant asserts that he had probable cause to arrest Plaintiff, that the injuries Defendant inflicted on Plaintiff were a reasonable use of force necessary to effectuate an arrest under the circumstances, and that Plaintiff's success in his criminal case is unrelated to his likelihood of success in the case at bar.

      a.    **Because Plaintiff had not engaged Defendant physically, and had not committed a crime, Defendant's use of force was not justified either by probable cause, or by the circumstances.**

The evidence against Defendant establishes a degree of force far out of proportion to any that might be required by even Defendant's version of events.  Defendant argues that he repeatedly asked Plaintiff to leave, that Plaintiff refused, and that Plaintiff "push[ed]" him. Defendant's Opposition to Motion for Attachment at 4.  Consequently, Defendant argues, it was necessary for Defendant "to engage [Plaintiff] physically," and "any injuries sustained by Plaintiff during this struggle were not the result of unreasonable force, but the result of the force necessary to effectuate a valid arrest made pursuant to probable cause." *Id.*  Defendant appears to argue that, where a police officer has probable cause to believe a party is trespassing, that officer has the authority to use deadly force.

The evidence of Plaintiff's injuries indicates substantial damage to his neck and shoulders, consistent with Plaintiff's allegation that Defendant threw him against a Toyota Camry, and lifted him from the ground by his neck.  Those injuries also are consistent with Plaintiff's allegation that Defendant "put both hands around [his] neck … and tightened his grip," such that Plaintiff "began to struggle for air." Second Amended Complaint at 4.  It is difficult to imagine how the Defendant hopes to convince a jury that this kind of force was necessary to effectuate an arrest for trespassing.  Moreover, to the extent that Defendant alleges that Plaintiff had physically engaged *him*, and that he responded with appropriate force, there is simply no evidence to support Defendant's assertion – and ample evidence to support Plaintiff's.

In addition, Defendant lacked probable cause to believe a crime was being committed, and thus Plaintiff denies that *any* force was appropriate.  Plaintiff's testimony is that the two parties did not become physically engaged until <u>after</u> Plaintiff attempted to depart Defendant's

driveway. *See* Plaintiff's Second Amended Complaint at 4, ¶ 20 ("Mr. Medina started to walk away after seeing Officer Coady's enraged eyes … The Defendant then ran at Mr. Medina ….") Given Defendant's unwillingness to testify at all in Plaintiff's criminal case, it is difficult to see how Defendant will present evidence contrary to Medina's, such that a jury would side with Defendant. Thus, the evidence is that Plaintiff was abiding by Defendant's insistence that he leave, that no trespass occurred, and that no force was necessary to effectuate any arrest.

Contrary to Defendant's argument, Plaintiff's injuries are at the core of his excessive force claim, demonstrating precisely the excessive force which occurred. Those injuries also play a substantial role in Plaintiff's false arrest claim, substantiating his claim that Defendant accused him of assault and battery in order to cover up his own assault. With no evidence that Defendant had probable cause to believe a crime had occurred, and no evidence that Plaintiff physically engaged Defendant, Plaintiff's injuries play a substantial role in the likelihood that he will prevail, simultaneously lending credence to the allegations of excessive force, and of false arrest.

        b.    **The dismissal of Plaintiff's criminal charges demonstrates the lack of probable cause for Plaintiff's arrest by Defendant, while lending support to Plaintiff's allegations that the arrest was intended to cover up the excessive force used on Plaintiff by Defendant.**

Defendant asserts that Plaintiff's likelihood of success in the instant case is somehow unrelated to Plaintiff's success in the criminal case at issue. Defendant argues that, even if Plaintiff was not guilty of the charges at issue beyond a reasonable doubt, a civil jury may still find that Defendant had probable cause to arrest him.

Defendant's argument on this point is disingenuous, suggesting that Plaintiff won his criminal case only because a jury had reasonable doubt as to the likelihood that he had committed a crime – that there was some evidence against Plaintiff, but not enough for a

8

conviction. On the contrary, Plaintiff's criminal case was resolved through a dismissal, due to the utter lack of evidence against him, and specifically due to Defendant's refusal to testify in the very case he had initiated because he feared incriminating himself. The resolution of Plaintiff's criminal case is precisely the sort of resolution one would expect if that case had lacked probable cause in the first place.

Moreover, Plaintiff does not argue a quantum of evidence. He does not assert that Defendant was mistaken in the likelihood that he had committed a crime, inaccurately finding probable cause, but rather that Defendant falsely accused Plaintiff of crimes that had *never occurred*. Plaintiff's likelihood of success does not turn on whether there was enough evidence to believe a crime had been committed, but on whether a jury believes Defendant fabricated the entire affair. The dismissal of the criminal case, due to Defendant's refusal to testify, gives a jury specific reason to believe precisely that.

### III. DEFENDANT'S ALLEGED CONDUCT, COMBINED WITH THE RELATIVELY LOW VALUE OF HIS PROPERTIES, IS SUCH THAT PLAINTIFF IS LIKELY TO RECOVER AN AMOUNT EQUAL TO THE VALUE OF THE PROPERTY SOUGHT FOR ATTACHMENT.

Defendant argues that Plaintiff is unlikely to recover an amount equal to the value of Defendant's property sought for attachment. To this end, Defendant argues: that Plaintiff's ascertainable damages are far less than the value of that property, that Plaintiff does not specify future medical expenses, and that anticipated punitive damages are neither a predictable amount, nor warranted by Plaintiff's claim.

Given the egregious and intentional nature of Coady's actions, Plaintiff is likely to obtain substantial punitive damages. Defendant's argument on this point – that Plaintiff's assertions of intentional and egregious conduct are "unsupported" – ignores both the volume of evidence in Plaintiff's favor, and the undeniably egregious and intentional quality of the allegations against

9

Coady. The conduct outlined in the complaint, including Coady lifting Medina by the throat, hurling him against a car and then falsely accusing Medina of assault and battery, is by definition both egregious and intentional. Furthermore, Plaintiff is also likely to recover ample damages for physical and emotional pain and suffering. Give the gravity of Plaintiff's injuries, such an award would likely be substantial.

Moreover, Defendant's oversimplified calculus of the likely damages at issue in this case includes the arithmetical error of asserting that Medina must show a likelihood of recovering damages in the amount of the full worth of the house. Since neither Coady nor his wife owns the property outright, Medina need only show that he is entitled to an amount equal to the *equity* in the house – an easy task, given the nature of the allegations.

## **CONCLUSION**

Because Defendant has fraudulently transferred his assets in an effort to evade judgment in the instant action, this Court should void such conveyances. In addition, because Plaintiff has shown that he is both likely to prevail on the merits, and to recover a judgment equal to or greater than the value of the properties, this Court should allow the motion for attachment.

Respectfully Submitted
Plaintiff Dennis Medina,
By his attorneys

//s// Jessica D. Hedges
DATED: May 28, 2008    Stephen Hrones (BBO No. 242860)
Jessica D. Hedges (BBO No. 645847)
Michael Tumposky (BBO No. 660618)
HRONES GARRITY & HEDGES LLP
Lewis Wharf-Bay 232
Boston, MA 02110-3927
T)617/227-4019

**CERTIFICATE OF SERVICE**

      I, Jessica D. Hedges, hereby certify that, on this the 28th day of May, 2008, I have caused to be served a copy of this document, where unable to do so electronically, on all counsel of record in this matter.

                                                                                //s// Jessica D. Hedges
                                                                                Jessica D. Hedges